**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| MICHAEL LUSK | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. _____ |
| | ) | JURY DEMANDED |
| THE CITY OF MEMPHIS, WAL MART | ) | |
| STORES EAST, LP; WAL MART | ) | |
| INC.; WAL MART ASSOCIATES; and | ) | |
| WALMART STORE #5122, | ) | |
| DARRELL MATHIS and RASHAD ROSS, | ) | |
| Individually and in their official capacities as a | ) | |
| City of Memphis Law Enforcement Officers, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW Michael Lusk, by and through counsel, and in this cause of action against Walmart Stores East, LP; Walmart, Inc.; Walmart Associates; Walmart Store #5122 (collectively, "Defendant Walmart" or "Walmart"), the City of Memphis ("City"), Officer Darrell Mathis ("Sergeant Mathis") and Officer Rashad Ross ("Officer Ross") and states as follows:

## I.      PRELIMINARY STATEMENT

The Memphis Police Department has engaged in a pattern of targeting, arresting, and prosecuting individuals for theft and related offenses after those individuals lawfully purchased vehicles from the City of Memphis's impound lot (the "City Impound Lot"). Mr. Lusk's case exemplifies this unconstitutional practice and underscores the urgent need for reform of the Memphis Police Department's policies, practices, and procedures to prevent the continued arrest and prosecution of innocent citizens.

1

The root of this problem lies in deficiencies in the City Impound Lot's operations and the Memphis Police Department's reporting, record-keeping, and handling of stolen-vehicle designations. Media reports and related litigation have documented multiple instances in which the City Impound Lot sold vehicles that remained listed as stolen in police records, including one notorious case involving a vehicle containing a deceased individual that was sold to Mr. Lusk. The Department has falsely arrested innocent purchasers, including at least one individual whose reported stolen vehicle was recovered by police and then resold through the impound lot. Even the auction company contracted by the City has publicly cautioned buyers that vehicles purchased from the impound lot may continue to appear as stolen in law enforcement databases.

Mr. Lusk has lawfully purchased and resold vehicles from the City Impound Lot for many years. Since 2010, he has acquired vehicles valued in excess of one million dollars from the lot. For reasons that remain unclear, the Memphis Police Department began targeting Mr. Lusk as a purported seller of stolen vehicles.

In May 2023, Shelby County prosecutors indicted Mr. Lusk on three counts of theft of vehicles and violations of Tennessee's chop shop laws (the "2023 Indictment"). This indictment stemmed from testimony and investigative efforts directed by Memphis Police Department officers. It alleged that Mr. Lusk knowingly obtained and exercised control over three stolen vehicles—all of which he had purchased from the City Impound Lot.

Following the 2023 Indictment, Mr. Lusk's relationship with the Memphis Police Department became increasingly adversarial. While contesting the charges in Memphis Criminal Court, Mr. Lusk also advocated publicly for others affected by similar impound-lot purchases. The 2023 charges were ultimately dismissed earlier this year.

On March 17, 2023, Mr. Lusk's brother, Bobby Lusk, filed a federal lawsuit against the City of Memphis and involved officers, alleging unlawful arrest and seizure of property during the investigation that led to the 2023 Indictment.

While the 2023 Indictment remained pending, Mr. Lusk was arrested again on April 5, 2024, pursuant to a new warrant for vehicle theft (the "2024 Warrant"). Because he was on bond for the 2023 charges, his bond was set at $3,000,000, which he could not post, resulting in over one month of pretrial detention. Mr. Lusk subsequently retained a private investigator who obtained documentation confirming that the vehicles referenced in the 2024 Warrant had been lawfully purchased from the City Impound Lot. The charges were dismissed in May 2024.

Most recently, on March 9, 2025, a Walmart employee reported a misdemeanor theft of merchandise valued at $24.00. Three days later, on March 12, 2025, Sergeant Mathis of the Memphis Police Department was assigned to the case. In his affidavit supporting an arrest warrant, Sergeant Mathis attested that a "Be On the Lookout" (BOLO) had been issued for the incident and that he received a tip from a "concerned citizen" identifying Mr. Lusk as the suspect. Sergeant Mathis prepared a photo lineup featuring Mr. Lusk as the first image.

On March 17, 2025, Sergeant Mathis presented the lineup to Walmart Loss Prevention Manager Simeon Burton and employee Arthur Williams at the store. Mr. Williams identified Mr. Lusk as the perpetrator. Subsequent investigation by the Shelby County Public Defender's Office revealed that Walmart employees Burton and Williams later admitted Mr. Lusk did not resemble the actual suspect and that they had "got the wrong guy." Mr. Williams's identification was either knowingly false or the product of coercion.

Relying on this identification, Sergeant Mathis obtained an arrest warrant on March 18, 2025, and Mr. Lusk was arrested on March 20, 2025. He remained in custody for four days.

It is standard practice in Shelby County for defendants released on bond to face revocation or high bond amounts upon new arrests, increasing pressure to plead guilty (often to probationary terms) while in custody. Mr. Lusk alleges that the 2024 Warrant and the 2025 misdemeanor warrant were issued intentionally to unlawfully detain him, coerce a guilty plea to the 2023 Indictment, and deter further civil litigation against the Memphis Police Department and the City of Memphis. Sergeant Mathis executed the 2025 warrant affidavit in furtherance of these objectives, acting in concert with or at the direction of other officers, including Officer Ross.

As a direct result of these actions, Mr. Lusk has suffered unjustified incarceration, substantial attorney fees, lost income, emotional distress, physical pain and suffering, and serious health consequences stemming from the extreme stress of repeated wrongful prosecutions and detentions.

## II. PARTIES

1.      Plaintiff Michael Lusk ("Mr. Lusk") brings this suit to recover for personal injuries from Defendants.

2.      Plaintiff Michael Lusk is resident of the city of Memphis, Tennessee and a citizen of the United States and has been at all times pertinent hereto.

3.      Mr. Lusk is a person of color and of African American descent.

4.      The City is a municipal corporation organized and existing under the laws of the State of Tennessee and can be served with process through its City Attorney, Jennifer Sink, Esq., at her office located at 125 North Main Street, Ste. 336, Memphis, Tennessee 38103.

5.      Defendants Darrell Mathis and Rashad Ross, upon information and belief, are residents of Memphis, Tennessee and, at all times relevant, law enforcement officers and agents with the City of Memphis police department. Upon information and belief, Defendants Mathis and Ross can be found at 201 Poplar Avenue, Memphis, Tennessee 38103. Defendants Mathis and Ross are being sued in

both their official capacities as law enforcement officers of the City of Memphis Police Department and in their individual capacities for actions or inactions taken by them individually.

6. The City of Memphis is a political subdivision of the State of Tennessee operating places of employment in Memphis, Shelby County, Tennessee within the jurisdiction and venue of this Court.

7. The City, Defendant Ross, and Defendant Mathis are persons within the meaning of 42 U.S.C. § 1983.

8. At all relevant times, Defendants Mathis and Ross were acting by virtue of their positions as law enforcement officials of The City and under the color of state law.

9. Defendant Walmart Stores East, LP is a limited partnership registered with the Tennessee Secretary of State and doing business in the State of Tennessee.

10. Walmart Stores East, LP is a Delaware limited partnership.

11. The general partner of Walmart Stores East, LP is WSE Management, LLC, a Delaware limited liability company.

12. The limited partner Walmart Stores East, LP is WSE Investment, LLC, a Delaware limited liability company.

13. The sole member of WSE Management, LLC and WSE Investment, LLC is Walmart Stores East, LLC, fka Walmart Stores East, Inc., an Arkansas limited liability company.

14. The sole member of Walmart Stores East, LLC is Walmart Inc., fka Walmart Stores, Inc., a Delaware corporation.

15. There are no other owners or partners of Walmart Stores East, LLC.

16. Defendant Walmart, Inc. is a corporation registered with the Tennessee Secretary of State and doing business in the State of Tennessee.

17. Defendant Walmart Associates is a corporation registered with the Tennessee Secretary of

5

State and doing business in the State of Tennessee.

18.      Defendant Walmart Store #5122 is a store doing business in Shelby County, Tennessee, and is, upon information and belief, owned and operated by Defendant Walmart Stores East, LP.

19.      Defendants Walmart, Inc., Walmart Associates, and Walmart Store #5122 are collectively referred to herein as "Walmart."

### III.    JURISDICTION AND VENUE

20.      This action includes compensatory damages to remedy violations of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

21.      Jurisdiction of the Court is founded upon 28 U.S.C. §1331 and 1343 (3) and (4), 42 U.S.C. § 1983, and 42 U.S.C. §1988.

22.      Alternatively, and in addition, with respect to Defendant Walmart, the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 et seq.

23.      Plaintiff is a resident of Shelby County, Tennessee.

24.      Defendant Walmart Stores East, LP is a limited partnership. It is incorporated in Delaware and has its principal place of business in Arkansas.

25.      Defendant Walmart Store #5122 is, upon information and belief, owned and operated by Walmart Stores East, LP.

26.      Walmart Stores East, LP ("WSE") is a Delaware limited partnership.

27.      The general partner is WSE Management, LLC, a Delaware limited liability company.

28.      The limited partner is WSE Investment, LLC, a Delaware limited liability company.

29.      The sole member of WSE Management, LLC and WSE Investment, LLC is Walmart Stores East, LLC fka Walmart Stores East, Inc., an Arkansas limited liability company.

30.      The sole member of Walmart Stores East, LLC is Walmart Inc. fka Walmart Stores, Inc., a

Delaware corporation.

31.    There are no other owners or partners of Walmart Stores East, LLC.

32.    Mr. Lusk seeks over seventy-five thousand dollars ($75,000.00) in damages from Walmart.

33.    Venue is proper in this Court because all or part of this cause of action arose within Shelby County, Tennessee.

34.    All wrongful acts and/or omissions alleged herein occurred within the jurisdiction of Shelby County, Tennessee. This case has been filed in a timely manner within one year from the date of injury described herein.

## IV.    FACTS

35.    The City Impound Lot has sold cars that had been previously stolen and were unclaimed from 2020 to the present.

36.    The City Impound Lot has sold a car with a dead body still inside it.

37.    The City Impound lot has sold cars that were still recorded as stolen by local, state and federal databases that maintain records related to stolen vehicles.

38.    Mr. Lusk has purchased more than one million dollars' worth of vehicles from the City Impound Lot.

39.    In May of 2023, the Shelby County prosecutors indicted Mr. Lusk on three (3) counts of theft of vehicles and one (1) count for violation of Tennessee's chop shop law ("2023 Indictment").

40.    From May of 2023 to the present Mr. Lusk has maintained his innocence as to the charges listed in the 2023 Indictment.

41.    On February 26, 2026, Assistant District Attorney William Walsh announced to the Shelby County Criminal Court that all charges listed in the 2023 Indictment will be dismissed.

42.    On March 17, 2023, Bobby Lusk, Mr. Lusk's brother, filed suit against the City of Memphis

and Officer Ross among other law enforcement officers.

43. On April 5, 2024, Mr. Lusk was arrested for theft of a vehicle.

44. On May 16, 2024, after a month in jail, the charges listed in the 2024 Warrant were dismissed by the Shelby County District Attorney General's Office.

45. On March 9, 2025, Walmart employee Arthur Williams reported that a "male black" had left their store without paying for store merchandise ("Theft").

46. As part of their investigation into the Theft, Walmart loss prevention employees captured and saved an image of the person they believed committed the theft ("Suspect"). Walmart employees saved a copy of the video that showed the Suspect.

47. The value of the Stolen Property was approximately $24.00.

48. Walmart's loss prevention policy is that thefts under $25.00 should not be prosecuted unless the perpetrator has repeatedly stolen from Walmart.

49. More than 5,000 misdemeanor thefts are reported every year to the City's police department.

50. On March 17, 2025, Officer Darrell Mathis brought a photo lineup including a photo of Mr. Lusk to Walmart Store # 5122.

51. Sergeant Mathis showed the photo of Mr. Lusk to loss prevention employees, Arthur Williams.

52. Walmart Loss Prevention Manager, Simeon Burton, was present when Sergeant Mathis showed Arthur Williams the photo lineup.

53. Sergeant Mathis, Mr. Williams and/or Mr. Burton worked together to falsely identify Mr. Lusk.

54. Mr. Lusk has never shopped at Walmart Store # 5122.

55. Upon information and belief, Mr. Lusk and the Suspect do not look alike except that they

are both Black men who appear older than 40.

56.     Mr. Williams and Mr. Burton have subsequently admitted that Mr. Lusk and the suspect do not look alike.

57.     On April 28, 2025, Mr. Williams stated to a Shelby County Public Defender investigator that, "I hate to say it, but we got the wrong guy."

58.     At the time that Mr. Williams identified Mr. Lusk as the person who stole $24.00 in merchandise, he was at Walmart Store # 5122 and had access to video surveillance that showed the Suspect.

59.      On March 18, 2025, Sergeant Mathis swore out a warrant for Mr. Lusk's arrest ("Arrest Affidavit").

60.     In the Arrest Affidavit, Sergeant Mathis swore that he put out a BOLO related to the Theft.

61.     In the Arrest Affidavit, Sergeant Mathis swore that a concerned citizen informed him that Mr. Lusk might be the perpetrator.

62.     In the Arrest Affidavit, Sergeant Mathis swore that he put together a photo lineup including six pictures.

63.     On March 20, 2025, Mr. Lusk was arrested and spent four (4) days in jail.

64.     As a result of his incarceration, Mr. Lusk became very ill because he was not provided his medication.

65.     Following his arrest, Shelby County prosecutors attempted to revoke Mr. Lusk's bond.

66.     Sergeant Mathis knows an arrest for new charges is likely to result in the revocation of Mr. Lusk's bond.

67.     Sergeant Mathis knows that when a defendant's bond is revoked, that defendant is likely to

be incarcerated until that defendant pleas.

68.     Sergeant Mathis knows that defendants in custody are more likely to plead guilty if they are offered a sentence probation because it results in a release from custody.

69.     Upon information and belief, Sergeant Mathis acted at the request of, or in concert with, multiple City police officers, including Officer Ross.

70.     Sergeant Mathis intentionally sought to have Mr. Lusk arrested in order to subdue Mr. Lusk, negatively affect Mr. Lusk's ability to sue the City of Memphis and other police officers, and force Mr. Lusk to plead guilty in order to get out of jail.

71.     The actions of Sergeant Mathis and other officers involved reflect a general lack of discipline and a lack of training and discipline within the City's Police Department.

72.     As a result of the repeated and unjustified harassment by Sergeant Mathis, Officer Ross, the City of Memphis, and Walmart, Mr. Lusk was wrongfully arrested, incarcerated for four (4) days, and suffered significant financial hardship, attorney fees, lost income, and damage to his health.

## V.     CAUSES OF ACTION

### AS TO ALL DEFENDANTS
### COUNT 1: MALICIOUS PROSECUTION

73.     Plaintiff, Mr. Lusk, hereby repeats and realleges the allegations set forth in each and every paragraph above as if expressly rewritten and set forth herein.

74. Between March 9, 2025, and March 20, 2025, Defendants or their agents, individually and/or collectively, instituted or caused to be instituted a criminal judicial proceeding against Mr. Lusk without probable cause.

75. During that same period, Defendants or their agents, individually and/or collectively, falsely accused Mr. Lusk of theft, leading to his public arrest and the filing of criminal charges.

76. During that same period, Defendants or their agents, individually and/or collectively, acted with malice and instituted the criminal charges against Mr. Lusk based on improper motives.

77. During that same period, Defendants had access to video footage that clearly showed Mr. Lusk was not the perpetrator and was not guilty.

78. The criminal judicial proceedings were terminated in Mr. Lusk's favor when all theft charges were ultimately dismissed, and Mr. Lusk was not guilty.

79. As a direct and proximate result of Defendants' malicious conduct, Mr. Lusk was publicly arrested, incarcerated for four (4) days, and suffered significant financial hardship, attorney fees, lost income, emotional distress, and damage to his health.

## AS TO DEFENDANT WALMART
## COUNT 2: NEGLIGENCE

80. Plaintiff, Mr. Lusk, hereby repeats and realleges the allegations set forth in each and every paragraph above as if expressly rewritten and set forth herein.

81. Walmart owed a duty of care to Mr. Lusk to ensure he was treated fairly and prosecuted for offenses he did not commit.

82. As businesses inviting customers onto its premises, Defendants owed Mr. Lusk a duty to properly train employees on loss prevention procedures and to accurately review evidence before making theft accusations.

83. Walmart breached its duty of care.

84. Walmart failed to properly train its employees and failed to ensure they accurately reviewed the video evidence showing Mr. Lusk did not steal from Walmart.

85. Walmart's breach caused Mr. Lusk to suffer injuries.

86. Walmart is liable for the negligent actions of its employees under the doctrine of respondeat superior.

87.    As a result of Walmart's negligence, Mr. Lusk was wrongfully arrested, incarcerated for four (4) days, and suffered significant financial hardship, attorney fees, lost income, and damage to his health.

### AS TO ALL DEFENDANTS
### COUNT 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88.    Plaintiff, Mr. Lusk, hereby repeats and realleges the allegations set forth in each and every paragraph above as if expressly rewritten and set forth herein.

89.    Defendants' conduct was intentional or reckless.

90.    Defendants intentionally accused Lusk of theft despite having video evidence to the contrary, causing his public arrest and subsequent incarceration.

91.    Defendants' conduct was so outrageous that it is not tolerated by civilized society.

92.    Defendants falsely accused an innocent person of a crime with full knowledge of their innocence, causing him to be publicly arrested, incarcerated, and subjected to significant personal and professional harm.

93.    Defendants' conduct resulted in serious mental injuries to Mr. Lusk.

94.    Lusk was hospitalized multiple times for stress-related illness in the year since this incident and suffered emotional distress.

95.    As a result of the intentional infliction of emotional distress, Mr. Lusk was wrongfully arrested, incarcerated for four (4) days, and suffered significant financial hardship, attorney fees, lost income, and damage to his health.

### VI.    CAUSES OF ACTION FOR VIOLATIONS OF DUE PROCESS UNDER 42 U.S.C. § 1983 AND CONSTITUTIONAL VIOLATIONS

96.    Plaintiff, Mr. Lusk, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

12

97.     Each and every act of Defendants were performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, policies, customs and usages of the United States of America, the State of Tennessee, and the City of Memphis, and under the authority of Defendant Ross's and Defendant Mathis's positions as law enforcement officers for The City.

**AS TO ALL DEFENDANTS**
**COUNT I: DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW: UNLAWFUL DETENTION PURSUANT TO THE 14TH AMENDMENT**

98.     Plaintiff, Mr. Lusk, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

99.     The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.

100.    To incarcerate Mr. Lusk for approximately four (4) days was punishment in violation of his due process rights.

101.    Defendant Ross and Defendant Mathis, acting independently or on behalf of the City, either with recklessness or negligence, offered false information in pursuit of obtaining the unlawful arrest Warrant in this case.

102.    Seeing as the information underlying the Warrant was false, the Warrant was deficient.

103.    Mr. Lusk has a clearly established right to be free from involuntary and unreasonable taking of life and liberty by Defendant Ross and Defendant Mathis, who are governmental officials. Defendant Ross and Defendant Mathis were governmental officials at the time of this illegal, involuntary, and unreasonable taking of life and liberty, and Defendant Ross and Defendant Mathis were acting in the scope and course of their employment with The City and were acting under color of law (statutes, ordinances, regulations, customs and usages of Defendants City of Memphis) when they committed these acts of wrongful seizure, false arrest, false charges, and false imprisonment.

13

**AS TO ALL DEFENDANTS**
**COUNT II: DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF THE LAW: LACK OF PROBABLE CAUSE TO ARREST**

104.    Mr. Lusk hereby incorporates in its entirety each and every paragraph of this Complaint as if fully set forth herein.

105.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.

106.    The facts underlying the 2025 Warrant was insufficient for a magistrate to find that there was probable cause to believe that Mr. Lusk had committed theft from Walmart.

107.    Alternatively, the facts underlying the 2025 Warrant were false, and Sergeant Mathis knew they were false when he included them in the Arrest Affidavit.

108.    Based on prior actions against Mr. Lusk, the 2025 is the third instance of a pattern or practice of falsely accusing Mr. Lusk and purchasers of theft.

109.    The conduct of the City, Defendant Ross, and Defendant Mathis, as described above, deprived Mr. Lusk of his right to be secure in his person and property against unreasonable seizures and his right to not be deprived of liberty without due process of law.

110.    Mr. Lusk has a clearly established right to be free from involuntary and unreasonable taking of life and liberty by Defendants, all of whom are governmental officials. Defendant Ross and Defendant Mathis were governmental officials at the time of this illegal, involuntary, and unreasonable taking of life and liberty. Defendant Ross and Defendant Mathis were acting in the scope and course of their employment with The City and were acting under color of law (statutes, ordinances, regulations, customs, and usages of Defendants City of Memphis) when they committed these acts of false arrest and false charges.

111.    The City was on notice of this clear and persistent pattern of unconstitutional conduct as multiple complaints beyond Mr. Lusk's have been lodged at The City for unlawfully targeting,

14

searching and seizing, arresting, and prosecuting individuals who purchased a vehicle from the City

Impound Lot and from Mr. Lusk related to prior arrests.

### AS TO ALL DEFENDANTS
### COUNT III: FEDERAL CONSTITUTIONAL VIOLATIONS

112.    Mr. Lusk hereby incorporates in its entirety each and every paragraph of this Complaint as if fully set forth herein.

113.    At all times material hereto, Defendants were acting by virtue of the laws of the State of Tennessee and by virtue of the laws of the State of Tennessee and by virtue of their positions as law enforcement officers of the City.

114.    Defendants City, Ross, and Mathis, by and through their elected and appointed officials, permitted, encouraged, and tolerated an official pattern, practice, or custom of their police deputies violating the constitutional rights of the public at large, including Mr. Lusk.

115.    The practice of City law enforcement officers of arresting lawful purchasers of vehicles from the Memphis impound lot for theft and chop-shop crimes clearly evidences a lack of training in how to lawfully complete their duties. If these actions were prohibited, the officers involved would have been disciplined.

116.    The continued harassment and targeting of Mr. Lusk clearly show a lack of training in how to lawfully complete their duties. If these actions were prohibited, the officers involved would have been disciplined.

117.    Upon information and belief, there is a pattern or practice of the City of arresting and targeting people who buy cars from the City. As a part of this custom or practice, The City would falsely charge, arrest, and imprison the lawful owners of the vehicles.

118.    The City is being sued for allowing a custom or practice of deliberate indifference to, among other things, wrongful seizure, false imprisonment, false charges, and unlawful arrest, especially as it

15

pertains to citizens who were accused of stealing and illegally modifying vehicles.

119.    The City is being sued for allowing a custom or practice of deliberate indifference to, among other things, intentionally lying in an arrest affidavit to apply pressure to Mr. Lusk.

120.    Such custom was the moving force and proximate cause behind the constitutional violations and damages complained of herein by Mr. Lusk.

121.    The City is utilizing at minimum inadequate, and at maximum injurious, policies and procedures to ostensibly combat vehicle theft in the Memphis area to the detriment of the life and liberty of Memphis area citizens.

122.    The City undoubtedly has the tools to ensure that their officers are acting within the bounds of the law and are not violating the constitutional rights of Memphis-area citizens. However, there is a patent disconnect between the training the officers received in properly prosecuting a citizen of Memphis and the policies and procedures in place within the City, as evidenced by the numerous unlawful detentions, arrests, and prosecutions of Mr. Lusk and other Memphians.

123.    It was the City' policies, practices, and procedures that were the driving force behind the actions taken by Officers Ross and Mathis.

124.    These policies, practices, and procedures were woefully deficient, as evidenced by the multiple instances of persons who have been unlawfully arrested, detained, prosecuted, and imprisoned, including Mr. Lusk.

125.    The City failed to properly train its police officers so as to ensure that they properly investigated potential auto theft crimes without violating the rights of Memphis area citizens in the process.

126.    Upon information and belief, no employees of the City have been disciplined for their role in unlawfully arresting Mr. Lusk.

16

127.    Additionally, and/or in the alternative, the City is liable for the violation of Mr. Lusk's civil rights due to the following policies, practices or customs of deputies which were in effect at the time of this incident, and which were the underlying cause of Mr. Lusk's damages.

128.    Upon information and belief, The City failed to discipline any employee and therefore, ratified their conduct as in compliance with the policies, practices, and customs of the City. Mr. Lusk avers that these policies, practices, and customs were the moving and underlying cause of his damages.

129.    Upon information and belief, The City chose to specifically ratify the policy of arresting lawful vehicle purchasers, and repeatedly arresting Mr. Lusk by allowing Sergeant Mathis to sign the arrest warrant for Mr. Lusk even though it explicitly mentioned that Mr. Lusk lawfully purchased the vehicle.

130.    The City has maintained and exhibited a pattern, practice, custom, and policy of deliberate indifference to among other things the use of unlawful seizure, charges, and arrest, including in regards to Mr. Lusk, which was the motivating force behind and proximately caused the deprivation of Mr. Lusk's constitutional rights under the Fourth and Fourteenth Amendments, and, accordingly, Mr. Lusk is entitled to recover from Defendants.

131.    As a direct and proximate result of Defendants' acts and/or omissions, Mr. Lusk sustained personal injuries, sustaining the damages and losses sought herein.

**VII.    DAMAGES**

132.    As a direct and proximate result of the actions of Defendants, Mr. Lusk suffered the following injuries and damages:

133.    Loss of personal freedom and liberty through improper seizure, false charges, false arrest, and false imprisonment;

134.    Pecuniary damages in the costs of legal fees to defend the false charges; and

135.    Embarrassment, mental anguish, and emotional distress.

17

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiff prays:

1.  That a copy of this Complaint be issued and served upon the Defendants and that the named Defendants be required to answer the allegations of this Complaint;

2.  For an award of compensatory damages against Defendants in favor of the Plaintiff in an amount to be determined at trial, but not less than $1,000,000.00.

3.  For an award of damages in favor of Plaintiff against Defendants for punitive damages in an amount not less than $2,000,000.00.

4.  For an award of costs and attorney fees against Defendants; That all costs in this case be taxed against Defendants;

5.  That this Court grant Plaintiff such other and further relief as this court deems just and proper, including, but not limited to, prejudgment interest.

Respectfully submitted this 20th day of May, 2026.


_/s/ Nathaniel H. Evans_
NATHANIEL H. EVANS, BPR #026292
THE EVANS LAW FIRM
625 Market Street, 10th Floor
Knoxville, TN  37902
(865) 523-2755
nate@evanslawfirm.law