**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL LUSK,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF MEMPHIS, WAL MART STORES EAST, LP, WAL MART INC., WAL MART ASSOCIATES, WALMART STORE #5122, DARRELL MATHIS, individually and in his official capacity as a City of Memphis law enforcement officer, and RASHAD ROSS, individually and in his official capacity as a City of Memphis law enforcement officer,<br><br>Defendants. | No. 2:26-cv-02304-SHL-atc |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant City of Memphis's (the "City") Motion to Dismiss Plaintiff's Second Amended Complaint, filed August 3, 2026. (ECF No. 34.) Plaintiff Michael Lusk filed a response on September 1, 2026, and the City filed a reply on September 15, 2026. (ECF No. 39; ECF No. 41.) For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

Lusk runs a small family business, which involves purchasing and reselling vehicles and vehicle parts from the City's Impound Lot. (ECF No. 34 at PageID 256, 262.) Lusk has operated this business for years and invested a large sum in its success. (Id. at PageID 256.)

[1] The facts are taken from Plaintiff's Second Amended Complaint (ECF No. 34), and are accepted as true for the purpose of ruling on the City's Motion.

According to Lusk, many of the vehicles auctioned at the Impound Lot are erroneously listed as stolen in several databases. (Id.) As a frequent purchaser at the Impound Lot, and given that many vehicles were erroneously designated stolen, Lusk became the subject of the Memphis Police Department's ("MPD") focus.

Lusk's trouble with MPD started in the Spring of 2022. On March 17, several MPD officers, members of the City's Auto Theft Task Force, executed a search warrant at Lusk's property, suspecting his involvement in auto theft and related crimes. (Id. at PageID 262.) According to Lusk, the 2022 search focused on vehicles he lawfully purchased from the City's Impound Lot. (Id. at PageID 263.)

Following the search, Lusk was indicted on three counts of theft of motor vehicles, one count of altering or changing a serial number, and one count of violating Tennessee's chop shop law. (Id.) All charges were dismissed by nolle prosequi four years after the indictment. (Id.)

In 2024, released on bond for his 2022 charges, Lusk was again charged with vehicle theft and related crimes. The charges came after Defendant Rashad Ross, an MPD Officer, swore out an Affidavit of Complaint. (Id.) According to Lusk's Complaint, Officer Ross was not a member of the Auto Theft Task Force, and, like his 2022 charges, the 2024 charges related to vehicles Lusk purchased from the City's Impound Lot. (Id.) Lusk was arrested on the 2024 charges and held on a $3,000,000.00 bond. (Id.) He spent a few days in jail but was released after the charges were dropped. (Id.)

Lusk had another run-in with law enforcement in the Spring of 2025, while his 2022 charges were pending, when a Walmart employee reported that a black male had left a local Walmart store without paying for merchandise valued at approximately $24.00. (Id. at PageID 264.) Walmart maintains a loss-prevention policy of not prosecuting thefts under $25.00, except

for repeat perpetrators. (Id.) Walmart employees saved an image of the individual they believed committed the theft. (Id.)

Defendant Darrell Mathis, an MPD officer, was assigned to the case. (Id.) In an affidavit, Mathis stated that a "be on the lookout" had been issued for the theft and that he received a tip "from a concerned citizen" that the suspect may be Lusk. (Id.) So, Officer Mathis prepared a photo lineup that included an image of Lusk. (Id.)

Mathis showed the lineup to two Walmart employees, Simeon Burton and Arthur Williams. (Id.) According to Lusk, either Burton, Williams, Officer Mathis, or a combination of the three identified Lusk as the theft suspect. (Id. at PageID 265.) Officer Mathis swore out an Affidavit of Complaint for Lusk's arrest for theft of property. (Id.) Lusk was arrested, spent four days in jail, and was then released. (Id.) The Walmart charges were dropped in July 2025. (Id. at PageID 266.)

Following the arrest, Williams and Burton admitted to an unnamed investigator, presumably hired by Lusk, "that Mr. Lusk and the [s]uspect d[id] not look alike and that, at the time they identified him, they understood they were accusing a man who did not match the person in the video." (Id. at PageID 265.) Burton also stated to the investigator that he observed Officer Mathis coerce Williams into identifying Lusk from the photo lineup. (Id. at PageID 266.) According to the unnamed investigator, Williams admitted that they "got the wrong guy." (Id.)

Upon this factual backdrop, Lusk brings several claims against the City and Officers Mathis and Ross in their official capacities as law enforcement officers for the City. (Id. at PageID 267–76, 278–80.) In particular, Lusk brings the following claims:

(1) Count One: 42 U.S.C. § 1983 — Malicious Prosecution as to Defendants Officer Mathis and Officer Ross."

(2) Count Two: 42 U.S.C. § 1983 — Municipal (Monell) Liability as to Defendant City of Memphis

(3) Count Three: Malicious Prosecution as to Defendants Officer Mathis, Officer Ross, and Walmart

(4) Count Four: Negligence as to Defendant Walmart

(5) Count Five: Intentional Infliction of Emotional Distress as to Defendants Officer Mathis, Officer Ross, and Walmart

(6) Count Six: Deprivation of Liberty Without Due Process of Law; Unlawful Detention as to Defendants Officer Mathis and Officer Ross

(7) Count Seven: Federal Constitutional Violations Under 42 U.S.C. § 1983 as to Defendants Officer Mathis and Officer Ross

(Id.) [2]

Lusk seeks to connect the City's alleged policies with the constitutional harms purportedly committed against him by Officers Mathis and Ross. (Id. at PageID 268.) Specifically, Lusk alleges that the City maintains a policy/practice/custom that encourages MPD officers to unlawfully seize cars, presume individuals who lawfully purchase vehicles from the City Impound Lot are thieves, and escalate minor, alleged shoplifting incidents into custodial arrests and prosecutions without probable cause. (Id. at PageID 268–69.) Lusk also alleges that the City's inadequate training evinces a deliberate indifference for the rights of those with whom the government employees have contact, as shown through the constitutional harms caused by

[2] Lusk also brings claims against the officers in their individual capacities and against Walmart, neither of which are at issue in this Order. Lusk's Complaint does not make clear which of his claims against Officers Mathis and Ross are brought against them as individuals and which are brought against them in their official capacity. For example, Count One of the Complaint reads "Count One: 42 U.S.C. § 1983 — Malicious Prosecution as to Defendants Officer Mathis and Officer Ross." (ECF No. 34 at PageID 267.) In their Motion, the City seeks dismissal of all claims where Officers Mathis and Ross are listed, assuming they are claims against them both as individuals and in their official capacity.

Officers Mathis and Ross. In other words, Lusk alleges that the City maintains unlawful policies, both through customs and inadequate training, that caused the malicious prosecution and unlawful seizure perpetrated by Officers Mathis and Ross. (Id. at PageID 276.)

Lusk points to a since-retracted 2024 DOJ Investigation and several lawsuits filed in the Western District of Tennessee as evidence of the City's unlawful policies, practices, and customs. (Id. at PageID 273–75, 292.) In particular, he asserts that it is the City's policy to: (1) presume that citizens who lawfully purchased vehicles and parts from its Impound Lot are thieves; (2) escalate minor, alleged shoplifting incidents into custodial arrests and prosecutions without probable cause, as part of a broader pattern of unlawfully arresting citizens for low-level offenses when officers lack probable cause; and (3) use custody and the threat of continued prosecution as leverage to extract admissions of guilt and deter civil claims. (Id. at PageID 268–69.) These policies, Lusk contends, explain his unlawful arrest and detention in connection with the 2025 Walmart investigation.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) tests whether a complaint complies with the requirements of Rule 8(a)(2). Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint must provide enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To do so, it "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Bartlett v. Kalamazoo Cnty. Cmty. Mental Health Bd., No. 18-1319, 2018 WL 4492496, at *1 (6th Cir. Aug. 22, 2018) (citation omitted).

"While plausibility requires relief to be more than speculative, it need not be probable; rather, 'a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" Montesi v. Nationwide Mut. Ins. Co., 2013 WL 4522905, *2 (W.D. Tenn. 2013) (quoting Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)). And in reviewing a complaint on a 12(b)(6) motion, "[t]he Court 'construes [it] in a light most favorable to [the] plaintiff' and 'accepts all factual allegations as true' to determine whether they plausibly suggest an entitlement to relief." Winding v. Memphis Police Dep't, No. 2:24-cv-02643-SHL-atc, 2025 WL 2622352, at *2 (W.D. Tenn. July 18, 2025) (citation omitted), report and recommendation adopted, 2025 WL 2453802 (W.D. Tenn. Aug. 26, 2025).

## III. ANALYSIS

The City offers several arguments in support of dismissal. First, it argues that Lusk's official-capacity claims against Officers Mathis and Ross should be dismissed as redundant, because official capacity claims are essentially claims against the City. (ECF No. 35-1 at PageID 288–89.) Second, it asserts that Lusk fails to plead a causal connection between the City's unlawful policies and the conduct of Officers Mathis and Ross. (Id. at PageID 289.) Third, the City contends that the Tennessee Governmental Tort Liability Act ("GTLA") shields the City from liability for Lusk's state-law malicious prosecution and intentional infliction of emotional distress claims. (Id. at PageID 294.) Fourth, the City argues that Lusk's claim for "Deprivation of Liberty without Due Process of Law; Unlawful Detention" should have been brought under the Fourth, not the Fourteenth, amendment, and is therefore subject to dismissal. (Id. at PageID 295–96.) Finally, the City submits that Lusk's Count Seven is a duplicative, catchall § 1983 claim that is subject to dismissal. (Id. at PageID 296–97.) In addressing the

City's Motion, this Order leaves unsettled Lusk's individual-capacity claims against Officer Mathis or Officer Ross.

A. Intentional Tort Claims

Lusk brings several state-law intentional tort claims against Officers Mathis and Ross, without specifying whether they are against the Officers individually or in their official capacity. (See ECF No. 34 at PageID 276, 278.) An official-capacity claim is, in substance, a suit against the City itself. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Because Lusk specifically names the City in other parts of his Complaint, we assume that the intentional tort claims are brought against the Officers solely in their individual capacity. But even still, the Parties agree that these claims, to the extent that they were brought against the Officers in their official capacity, are subject to dismissal because the Tennessee Governmental Tort Liability Act ("GTLA") immunizes the City from liability for intentional torts. (Compare ECF No. 35-1 at PageID 294 (where the City's argues for dismissal of Lusk's state law claims under the GTLA), with ECF No. 39-1 at PageID 354 ("Plaintiff does not oppose dismissal of [his] . . . malicious prosecution . . . and intentional infliction of emotional distress [claims] as against the City only.").) Therefore, to the extent counts three and five are against the officers in their official capacity and thus against the City, they are **DISMISSED WITH PREJUDICE**.

B. Official-Capacity Claims

Like Counts Three and Five, Lusk brings Counts One, Six, and Seven against Officers Mathis and Ross without specifying whether they are against the Officers individually or in their official capacity. (ECF No. 34 at PageID 267, 279.) As explained above, an official-capacity claim is, in substance, a suit against the City itself. See Graham, 473 U.S. at 165–66. Because

Lusk specifically names the City in other parts of his Complaint, the Court also assumes that Counts One, Six, and Seven are brought against the Officers as individuals.

In addition to questions regarding the types of claims against the Officers, the claims should also be dismissed as redundant. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Graham, 473 U.S. at 165–66 (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)); see also Riggs v. Bartlett, City of, Tennessee, 833 F. Supp. 3d 857, 892 n.22 (W.D. Tenn. Mar. 31, 2026) (dismissing official-capacity claims against police officers as duplicative of claims against city). Therefore, Counts One, Six, and Seven of Lusk's Complaint, to the extent they bring claims against Officers Mathis and Ross in their official capacities, are duplicative, and, consequently, are **DISMISSED WITHOUT PREJUDICE**. However, to the extent Lusk's Monell claim against the City hinges on and incorporates the allegations in Counts One, Six, and Seven, those allegations are considered below. Additionally, as indicated above, these claims remain against the Officers in their individual capacity.

C. Monell Liability Claim

The City frames Lusk's Monell claim as "ris[ing] or fall[ing] on the same threshold showing: that the City, acting through Officer Mathis and Officer Ross and its policies, practices, and customs allegedly caused Plaintiff to be unconstitutionally prosecuted or unlawfully detained." (ECF No. 35-1 at PageID 289.) On this issue, the City offers several arguments, which are best addressed in two separate categories: (1) those relating to a lack of causal connection between the City's policy and the conduct of Officers Ross or Mathis; and (2) those relating to the viability of Lusk's malicious prosecution claim.

1. Causal Connection

"A municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). "A plaintiff generally has four ways to demonstrate an unlawful policy or custom: '[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.'" Milby v. Underwood, 713 F. Supp. 3d 383, 390 (W.D. Ky. Jan. 30, 2024) (quoting Spears v. Ruth, 589 F.3d 249, 256 (6th Cir. 2009)).

But "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Horn v. City of Covington, No. 14–73–DLB–CJS, 2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015) (quoting Monell, 436 U.S. at 694). And even if a plaintiff alleges "an unlawful policy or custom, a plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation." Milby, 713 F. Supp. 3d at 390. Thus, at the 12(b)(6) stage, a plaintiff must plausibly allege: (1) an unlawful policy or custom; and (2) a direct causal link between that policy or custom and the harm alleged. Id. In other words, a complaint must contain either direct or inferential allegations that connect a policy or custom to the plaintiff's deprivation of rights. See Hines v. Shelby Cnty., No. 2:17-cv-2072-STA-egb, 2018 WL 1278208, at *3 (W.D. Tenn. Mar. 12, 2018).

A plaintiff may pursue a Monell claim based on a municipality's failure to provide employees with adequate training, when that failure "evinces deliberate indifference for the

rights of those with whom the government employees have contact, such that the inadequate training may be fairly said to represent the [municipality's] policy or custom." Sampson v. Blue Cross Blue Shield of Michigan, No. 13-10113, 2014 WL 13114040, at *3 (E.D. Mich. Mar. 21, 2024) (citing City of Canton v. Harris, 489 U.S. 378, 388–89 (1989)). To support a claim that a failure to train or supervise is the result of a municipality's deliberate indifference, a plaintiff must either point to "a pattern of similar constitutional violations by untrained employees" or "establish 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" Baker v. Madison Cnty. Fiscal Ct., No. 5: 24-240-DCR, 2025 WL 680803, at *5 (E.D. Ky. Mar. 3, 2025) (citing Shadrick v. Hopkins Cnty., 805 F.3d 724, 738–39 (6th Cir. 2015)).

The City contends that while Lusk leans heavily on the 2022 raid of his auto shop and the subsequent activities of the Auto Theft Task Force, he fails to connect those allegations to his 2025 Walmart arrest. (Id. at PageID 291.) It also argues that, notwithstanding Officer Ross's swearing out of an Affidavit of Complaint on Lusk's 2024 warrant, Lusk does not connect him to the Auto Theft Task Force. (Id.) As for Officer Mathis, the City contends that Lusk's Complaint alleges no connection between him and Lusk prior to the 2025 Walmart arrest. Based on these missing connections, the City posits that Lusk "cannot plausibly plead that the City's conduct in the Walmart matter was causally connected to, or motivated by, the prior vehicle-theft matters that otherwise dominate the Second Amended Complaint." (Id. at PageID 292.) Stated differently, the City maintains that Lusk cannot proceed on an unlawful policy/custom/practice Monell claim when the policy/custom/practice, to the extent one exists, is too attenuated and insufficiently connected to his alleged constitutional harms.

In response, Lusk contends that the City ignores several "interlocking customs and practices" alleged in his Complaint. Specifically, he alleges that the City "treat[s] lawful purchasers of City Impound Lot vehicles as thieves, [and] . . . fail[s] to update "stolen" status in databases after auction; (2) escalat[es] low-level offenses into custodial arrests and prosecutions without probable cause; (3) us[es] custody and the threat of prosecution as leverage to extract admissions and deter civil claims; and (4) [is] deliberate[ly] indifferen[t] to the need for training and supervision regarding probable cause, reliance on objective evidence, and the constitutional limits on low-level arrests." (ECF No. 39-1 at PageID 350.)

Moreover, Lusk appears to argue that these "interlocking customs and practices" form a City policy that Officer Mathis was carrying out when he detained and participated in the prosecution of Lusk in connection with the 2025 Walmart investigations. (Id.) In other words, Lusk posits that his 2025 Walmart arrest reflects the City's alleged policy of pursuing low-level offenses to intimidate him and individuals like him from pursuing civil action against MPD officers and the City. (Id.; ECF No. 34 at PageID 258.) Lusk, in turn, alleges that the civil suits the City seeks to deter are those that criticize the City's Impound Lot practices and its treatment of Impound Lot purchasers as thieves. (ECF No. 34 at PageID 256, 274.) Lusk maintains that these allegations are "grounded in the 2024 DOJ Investigation of MPD." (Id.)

Moreover, Lusk responds that the City

> ignores [his] explicit allegations that the [2025] prosecution was part of a broader pattern of retaliation against [him] for criticizing the City's system and pursuing civil litigation, and that Officer Mathis's investigation of a $24 misdemeanor, below Walmart's own prosecution threshold and involving unusual resource expenditure for a photo lineup, was consistent with MPD's documented practices of using low-level offenses as tools of intimidation.

(ECF No. 39-1 at PageID 350.) And, Lusk contends that his Monell claim, is, if anything, strengthened by the lack of a pre-2025 connection between Lusk and Officers Mathis or Ross.

(Id. at PageID 351.) In Lusk's view, his 2025 Walmart arrest cannot be explained by individual animus, given the absence of personal history between him and Officers Mathis and Ross, and can therefore only be explained "by the culture and training of MPD and cooperation among multiple officers to retaliate against [him]." (Id.)

To the extent that Lusk's Monell claim is premised on a connection between the City's customs, practices, and policies, and his 2025 arrest and alleged malicious prosecution, the allegations are insufficient to establish a claim. As the City correctly observes, Lusk fails to allege that Officer Mathis had any connection to him at all prior to 2025. (ECF No. 35-1 at PageID 291.) Without such allegations, Lusk' fails to make a direct connection, or an indirect one through reasonable inferences, between Officer Mathis's conduct in the Walmart arrest and the City's alleged policy of treating those with Impound Lot vehicles as thieves, escalating low-level offenses into custodial arrests and prosecutions without probable cause, and using custody and the threat of prosecution as leverage to extract admissions and deter civil claims. In other words, Lusk's claim against the City, through the official acts of Officer Mathis, fails as it lacks factual allegations connecting Mathis to the City's allegedly unlawful policy.

As the City correctly observes, to adopt Lusk's absence-of-connection argument would be to "stand[] Monell on its head." (ECF No. 41 at PageID 361 (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).) Much, if not all, of Lusk's policy allegations relate to the MPD's treatment of Impound Lot purchasers, the Auto Theft Task Force, and the events surrounding and underlying his 2022 arrest. It is simply a bridge too far for this Court to infer that Officers Mathis and Ross, unconnected to Lusk's 2022 arrest, the events surrounding and underlying it, or the Auto Theft Task Force, are somehow connected to the City's alleged policy and were effectuating that policy during the 2025 Walmart arrest. And Lusk's Complaint fails,

even as to Officer Ross, who swore out an Affidavit of Complaint for Lusk's 2024 arrest, to plausibly plead facts that connect Officer Ross to the Auto Theft Task Force, Lusk's 2022 arrest, or otherwise implicate him in the City's unlawful policy.

To be sure, Lusk's Complaint alleges that the City maintains "interlocking customs and practices," including:

> treating lawful purchasers of City Impound Lot vehicles as thieves, including failures to update "stolen" status in databases after auction; (2) escalating low-level offenses into custodial arrests and prosecutions without probable cause; (3) using custody and the threat of prosecution as leverage to extract admissions and deter civil claims; and (4) deliberate indifference to the need for training and supervision regarding probable cause, reliance on objective evidence, and the constitutional limits on low-level arrests

(ECF No. 39-1 at PageID 350. (citations omitted).) No well-plead factual allegations connect these allegations to Officer Mathis, Officer Ross, or the 2025 Walmart arrest. Without these connections, Lusk has failed to plausibly plead a claim for Monell liability based on a custom, practice, or policy of the City. Therefore, insofar as the City seeks dismissal of Lusk's Monell that is premised on the City's customs, practices, and policies, the Motion is **GRANTED**.

However, Lusk also appears to allege that the City failed to provide employees with adequate training, reflecting deliberate indifference. (See ECF No. 34 at PageID 270 ("Despite . . . purported training, MPD officers . . . initiate baseless theft investigations and arrests against lawful City Impound Lot purchasers . . . demonstrating that the City's training, supervision, and oversight are grossly inadequate and reflect deliberate indifference to the constitutional rights of Memphis-area citizens.").) The City's Motion does not address this argument. Therefore, Lusk's Monell claim remains viable to the extent it rests on a deliberate indifference/failure to train theory. See Sapia v. Bd. of Educ. of City of Chicago, 329 F.R.D. 585, 587 (N.D. Ill. 2019) ("Courts do not sit to make arguments for a party that the party, itself, did not make.").

2. Malicious Prosecution

A claim for malicious prosecution, when brought under § 1983 and premised on a violation of the Fourth Amendment, requires a plaintiff to show:

> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor.

Mashek v. Halsey, No. 3:23-cv-429, 2025 WL 1081853, at *4 (E.D. Tenn. Apr. 10, 2025). "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." Hicks v. City of Millersville, No. 3:21-cv-00837, 2022 WL 3589489, at *6 (M.D. Tenn. Aug. 22, 2022) (quoting Sykes v. Anderson, 625 F.3d 294, 311 n.9 (6th Cir. 2010)). This element may be satisfied if an officer "deliberately made false or misleading statements and omitted material information from his warrant application in order to manufacture probable cause." Id. (citing Sykes, 625 F.3d at 306).

The City attacks Lusk's Monell-malicious prosecution claim because it "contains no allegation regarding the nature of the 2025 Warrant." (ECF No. 35-1 at PageID 292.) Moreover, the City contends that Lusk does not "allege that Officer Mathis's affidavit misstated facts or omitted information known to him at the time he swore it out." (Id.) The City also posits that "the identification decision that led directly to [Lusk's] arrest was made by Walmart's employees, not the City's officers." (Id.) Finally, the City argues that Lusk does not allege that Officer Mathis or Ross participated in the decision to prosecute him. (Id.)

In response, Lusk maintains that he adequately pleads facts to state a claim for malicious prosecution. In particular, Lusk's Complaint alleges that: (1) Officer Mathis obtained an identification of Lusk despite a clear mismatch in appearance between the surveillance video and

Lusk; (2) Officer Mathis swore out an Affidavit of Complaint that led to Lusk's arrest and four-day incarceration; (3) the charge was later dismissed; (4) one Walmart employee conceded that he had identified the wrong individual; (5) another Walmart employee stated that Officer Mathis appeared to coerce his coworker to secure the misidentification; and (6) the fact that, despite Walmart employees making the identification, Officer Mathis selected the photo lineup, presented it, swore out the warrant, and employed coercion in the process. (ECF No. 39-1 at PageID 348.)

On balance, and at this stage in the litigation, the City's arguments for dismissal of Lusk's Monell-malicious prosecution claim fail. Lusk adequately alleges all the elements of malicious prosecution. And while Lusk's Complaint might not, verbatim, allege that the warrant underlying his 2025 arrest was invalid, his allegation that it was the product of coercion functions similarly to such a verbatim allegation. Accord Meeks v. City of Detroit, 220 F. Supp. 3d 832, 839 (E.D. Mich. Nov. 16, 2016) ("[While] [a] facially valid warrant or indictment is 'normally a complete defense to a federal constitutional claim, . . . [a]n exception to this general rule exists where officers procure the warrant or indictment by making 'material false statements either knowingly or in reckless disregard for the truth.'" (citation omitted)).

The City's argument that Walmart's role in the identification vitiates liability for Officer Mathis, and, in turn, the City, is puzzling. For one, it ignores Officer Mathis's alleged role in the identification, particularly the purported coercion. At this stage, the allegations of the Complaint must be presumed to be true, including the contention that Officer Mathis pressured the witnesses. If ultimately true, malicious prosecution is plausible in support of Lusk's Monell claim.

Finally, the City's assertion that Lusk fails to allege that Officer Mathis or Ross participated in the decision to prosecute him also fails. By alleging that Officer Mathis coerced an employee to secure the identification, and, in turn, the warrant and subsequent arrest, Lusk has adequately

pled the participation element. See, e.g., Hicks, 2022 WL 3589489, at *6 (denying 12(b)(6) motion on plaintiff's malicious prosecution claim because allegation that officer falsely stated multiple witnesses description of a suspect was sufficient for purposes of alleging that officer participated in decision to prosecute him).

However, and as discussed above, Lusk fails to adequately connect Officer Ross to the 2025 Walmart arrest. Aside from a stray reference to Officer Mathis swearing out the 2025 Warrant "in connection with . . . other MPD officers, including Officer Ross," all the allegations related to the Walmart arrest center on Officer Mathis. As such, Lusk fails to plausibly plead facts sufficient to show Officer Ross engaged in malicious prosecution.

Therefore, the City's Motion is **GRANTED**, to the extent it seeks dismissal of Lusk's Monell claim as premised on Officer Ross's conduct in the 2025 Walmart theft. Otherwise, the City's Motion is **DENIED**.

Before turning to the remainder of the City's arguments, and because the pleadings are something of a Gordian Knot, a quick summary is in order. Lusk's Monell claim, insofar as it alleges deliberate indifference via Officer Mathis' purported malicious prosecution in connection with the 2025 Walmart arrest, remains. However, Lusk's policies/practices/customs Monell claim, and his Monell claim based on Officer Ross's malicious prosecution, are **DISMISSED WITHOUT PREJUDICE**.

D. Fourteenth Amendment Due Process Claim

Count Six of Lusk's Complaint, captioned "Deprivation of Liberty Without Due Process of Law; Unlawful Detention as to Defendants Officer Mathis and Officer Ross," alleges that

Officers Mathis and Ross caused him to be seized and detained without probable cause.[3] (ECF No. 34 at PageID 279.) The City argues that this claim must be dismissed because the Fourth, not Fourteenth, amendment governs such claims. As Lusk miscaptioned his claim, and included a reference to the Fourteenth, rather than the Fourth, amendment, the City argues that the claim should be dismissed.

In response, Lusk agrees that claims of unlawful pretrial detention—allegations of which Lusk's claim contains—are governed by the Fourth, not Fourteenth, amendment. (ECF No. 39-1 at PageID 352.) But Lusk argues that, under liberal notice-pleading principles, the proper inquiry focuses on the contents of his claim, not its label. (Id.) As such, Lusk argues that Count Six of his Complaint should proceed as a Fourth amendment claim. (Id.)

To dismiss Lusk's Monell claim, insofar as it relies on the allegations in Count Six, based, almost exclusively, on its labeling, would seem to put form over substance. As such, and mindful of this Circuit's policy, albeit in other contexts, of resolving cases on the merits, dismissal on this non-substantive ground would be inappropriate. See, e.g., United States v. Real Property, All Furnishings Known as Bridwell's Grocery, 195 F.3d 819, 820 (6th Cir. 1999) (explaining that, in the default judgment context, there is "a strong preference for [adjudication] on the merits." (quoting Shepard Claims Serv., Inc. v. William Darrah & Assoc., 796 F.2d 190, 193 (6th Cir. 1986))). Therefore, the City's Motion, as it relates to the allegations contained in Count Six, is **DENIED**. Lusk's Monell claim shall proceed as inclusive of the allegations contained in Count Six of his Complaint.

---

[3] As explained above, this claim is dismissed as a standalone claim against the City, because Lusk does not specify whether it is against the Officers as individuals or in their official capacity, and would nevertheless be redundant. However, because Lusk's Monell claim is premised, in part, on the allegations contained in Count Six, the City's argument is addressed herein.

E. Catchall § 1983 Claim

Lusk's final claim, captioned "Federal Constitutional Violations Under 42 U.S.C. § 1983 as to Defendants Officer Mathis and Officer Ross," reiterates his allegation that Officers Mathis and Ross violated his Fourth and Fourteenth amendment rights.[4] The City argues that this claim is duplicative of Counts One, Two, and Six, and, therefore, should be dismissed. (ECF No. 35-1 at PageID 296–97.) Lusk maintains that Count Seven is merely an "alternative pleading," and that it does not overlap with his other claims to warrant dismissal.

Because "it is axiomatic that [a] [plaintiff] cannot assert two separate counts alleging the exact same claims," Smith v. Bd. of Trustees Lakeland Cmty. Coll., 746 F. Supp. 2d 877, 899 (N.D. Ohio 2010), a court may "dismiss duplicative claims as it does not prejudice a plaintiff." Moran v. Ruan Logistics, No. 1:18-cv-223, 2018 WL 4491376, at *3 (S.D. Ohio Sep. 19, 2018). Here, Count Seven is duplicative. Although he frames it as an "alternative pleading," he fails to convincingly explain how it is anything other than a less detailed Fourth amendment claim. Because Count Six, properly construed, brings a Fourth amendment claim, there is no reason for Count Seven to remain, and dismissing it will not prejudice Lusk. Therefore, as to Count Seven, the City's Motion is **GRANTED** and that claim, insofar as it buttresses Lusk's Monell claim against the City, is **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the above-outlined reasons, the City's Motion is **GRANTED IN PART** and **DENIED IN PART.** The following claims, to the extent they are brought against the City, are **DISMISSED WITHOUT PREJUDICE**: (1) Count One; (2) Count Two, to the extent it is premised on the City's customs, practices, and policies; (3) Count Three; (4) Count Five; and (6)

[4] See supra, n.3.

Count Seven. Lusk's Monell claim (Count Two) remains, inclusive of the allegations in Count One against Officer Mathis and the allegations against both Officers in County Six. Lusk's claims against the Officers in their individual capacity will proceed.

**IT IS SO ORDERED,** this 16th day of November, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE